CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 1 8 2018

JULIA C. DUDLEY, CLERK
BY: HVclDonsoe
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **DAN HAENDEL,** | ) | **Civil Action No. 7:17-cv-00135** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | <u>**MEMORANDUM OPINION**</u> |
| | ) | |
| **HAROLD W. CLARK, <u>et al.</u>,** | ) | **By:  Hon. Jackson L. Kiser** |
| **Defendants.** | ) | **Senior United States District Judge** |

Dan Haendel, a former Virginia inmate proceeding <u>pro se</u>, commenced this action while incarcerated pursuant to 42 U.S.C. §§ 1983 and 2000cc-1, <u>et seq.</u>[1]  Plaintiff names numerous officials of the Virginia Department of Corrections ("VDOC"), Haynesville Correctional Center ("HCC"), and Coffeewood Correctional Center ("CWCC") as defendants.[2]  Generally, Plaintiff alleges that Defendants unlawfully failed to accommodate his religious practices and discriminated against him, in violation of the First and Fourteenth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  This matter is before me on the parties' motions for summary judgment (ECF Nos. 29, 33, and 55) and Plaintiff's motion for contempt (ECF No. 45) and motion for a preliminary injunction (ECF No. 34).  After reviewing the record, I grant in part and deny in part Defendants' motion for summary judgment, deny Plaintiff's motions for summary judgment, deny in part Plaintiff's motion for a preliminary injunction, and refer Plaintiff's motion for contempt to United States Magistrate Judge Joel C. Hoppe.

---

[1] Plaintiff is an attorney of the District of Columbia Bar.  <u>See</u> In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites); <u>Williams v. Long</u>, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating).  Consequently, I decline to extend the liberal construction standard to an attorney.  <u>See</u> Haines v. Kerner, 404 U.S. 519, 521 (1972) (observing that a court should hold <u>pro se</u> complaints to "less stringent standards than formal pleadings <u>drafted by lawyers</u>" (emphasis added)).

[2] Plaintiff was confined at HCC from March until September 2015, when he was transferred to CWCC.  CWCC is located within the Charlottesville Division of this court, and HCC is located in the Eastern District of Virginia.

Plaintiff presents two main claims and seeks damages and equitable relief. First, Director Clarke, Chief of Corrections Robinson, Warden Gilmore, Assistant Warden Hicks, and Institutional Program Manager Gourdine violated the First Amendment's Free Exercise Clause and RLUIPA by providing inadequate "kosher for Passover" foods during Passover in 2016 and 2017 and inadequate kosher foods daily on the Common Fare Diet ("Common Fare") at CWCC.[3] Second, Defendants violated the Fourteenth Amendment's Equal Protection Clause by discriminating against him for being Jewish.

As part of his Jewish faith, Plaintiff believes he should consume only kosher food and should observe the Jewish holiday Passover, which lasts approximately eight days. Plaintiff asserts that, while foods served during Passover are labeled as kosher, they are not labeled as "kosher for Passover." Plaintiff explains that foods designated as kosher for everyday consumption are not adequate for consumption during Passover, and instead, he must consume specific "kosher for Passover" foods. Plaintiff asserts that Defendants fail to appreciate the difference between kosher and kosher for Passover foods because, despite his objections, the VDOC continued to serve him unacceptable foods – non-kosher and regular kosher foods – during Passover. Plaintiff also objects to the food served on Common Fare as inadequate for his daily consumption because he believes Common Fare is not kosher.[4] Plaintiff alleges that kosher foods served on Common Fare and during Passover are made un-kosher by being "tainted" from contacting something that had contacted a non-kosher food. Plaintiff also specifically objects to

---

[3] Common Fare is the VDOC's specially-designed diet intended for inmates whose dietary requirements cannot be accommodated by the regular menu and eat kosher foods.

[4] Plaintiff asserts that he wanted to eat kosher foods from Common Fare but abandoned all attempts to receive Common Fare once he learned it was not kosher.

the VDOC not providing kosher for Passover foods during the first two days of Passover in 2017.

Defendants assert that the VDOC recognizes the need for inmates of a Jewish faith to observe Passover and "provide[s] a religious diet that reasonably accommodates" their religious dietary needs "to the extent feasible during Passover." Plaintiff argues that there cannot be a "reasonable accommodation" of kosher for Passover; "it either is or it isn't."

Plaintiff believes that Defendants were anti-Semitic and unlawfully penalized him for being Jewish. He believes Clarke, Robinson, Gilmore, Hicks, and Gourdine were discriminatory for not correcting the food, Warden Allen was discriminatory for not allowing him to have a Jewish calendar, Captain Ward was discriminatory for not disciplining a subordinate, and Assistant Warden Bowles and Unit Manager Long were discriminatory for ejecting Plaintiff from a housing unit.

## II.

Plaintiff's release from incarceration moots injunctive relief and his RLUIPA claims. "[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)); see United States v. Springer, 715 F.3d 535, 540 (4th Cir. 2013) (recognizing mootness may be raised sua sponte). Federal courts are "not empowered to decide moot questions or abstract propositions. . . ." California v. San Pablo & Tulare R.R., 149 U.S. 308, 314 (1893). "Moot questions require no answer." Mo., Kan. & Tex. Ry. v. Ferris, 179 U.S. 602, 606 (1900).

Damages are not an available remedy under RLUIPA, and Plaintiff's release means the remaining remedies for a RLUIPA claim could no longer redress the alleged harms.[5] See, e.g., Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014) (noting damages are unavailable via RLUIPA and "plaintiff's only potential remedies under RLUIPA are equitable"); Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007) (stating a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages); see also United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950) (noting the duty of appellate court when "dealing with a civil case from a court in the federal system which has become moot while on its way [t]here . . . is to reverse or vacate the judgment below and remand with a direction to dismiss). The possibility that Plaintiff may re-enter the VDOC is too speculative to find a justiciable claim for injunctive or declaratory relief. See L.A. v. Lyons, 461 U.S. 95, 105-08 (1983) (holding that Lyons did not have standing to seek an injunction prohibiting the Los Angeles Police Department from employing chokeholds because he could not establish that he would be subjected to a chokehold in the future); O'Shea v. Littleton, 414 U.S. 488, 497 (1974) (holding that no case or controversy existed to issue injunction about the enforcement of criminal laws because it was to be assumed that "[plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners"). Accordingly, injunctive and declaratory relief is not available, and the RLUIPA claims are dismissed without prejudice.

---

[5] Plaintiff asserts as a conclusion that damages are available via RLUIPA under the Commerce Clause. I do not find Plaintiff's bare assertion persuasive and decline to construct that argument on his behalf.

## III.

Defendants assert they are entitled to summary judgment and qualified immunity for Plaintiff's request for damages pursuant to 42 U.S.C. § 1983. Qualified immunity protects government officials from damages in their individual capacities[6] for "bad guesses in gray areas" and ensures that they may be held personally liable only for "transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992); see In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority."). Qualified immunity involves a two step inquiry: (1) whether a constitutional or statutory right would have been violated on the alleged facts, and (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). Clearly established law "includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." Wall, 741 F.3d at 502-03. Case law recognized before March 2015 that an inmate has a clearly established right to a diet consistent with religious scruples under the First Amendment, Lovelace v. Lee, 472 F.3d 174, 198-99 (4th Cir. 2006), and to be free from religious discrimination under the Fourteenth Amendment, Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact

---

[6] Damages are not available against defendants in their official capacities. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Lytle v. Griffith, 240 F.3d 404, 408 (4th Cir. 2001).

exists if, in viewing admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the admissible evidence as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

## IV.

A.    First Amendment

An inmate's right to religious exercise under the First Amendment must be balanced with a prison's institutional needs of security, discipline, and general administration. Cutter v. Wilkinson, 544 U.S. 709, 722 (2005); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). A "substantial burden" on religious exercise occurs under the First Amendment if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . .

on the other hand."[7] <u>Lovelace</u>, 472 F.3d at 187; <u>see, e.g.,</u> <u>Patel v. Bureau of Prisons</u>, 515 F.3d 807, 814 (8th Cir. 2008) ("When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA."). A successful free-exercise claim must show a defendant's conscious or intentional interference with the plaintiff's religious rights. <u>Wall</u>, 741 F.3d at 500 n.11. "Allowing negligence suits to proceed . . . would undermine . . . deference [to the experience and expertise of prison and jail administrators] by exposing prison officials to an unduly high level of judicial scrutiny." <u>Lovelace</u>, 472 F.3d at 194. Consequently, less than intentional conduct is insufficient to meet the fault requirement for a free-exercise claim.

A correctional policy or practice that substantially burdens an inmate's First Amendment right is valid if it is reasonably related to legitimate penological interests. <u>Id.</u> at 199. Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

<u>Id.</u> at 200 (citing <u>Turner v. Safley</u>, 482 U.S. 78, 89-92 (1987)); <u>see</u> <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation under <u>Turner</u>).

---

[7] I assume for purposes of this opinion that Plaintiff's desire to eat kosher and kosher for Passover foods is a personal practice that is both sincerely held and rooted in religious belief. <u>See, e.g.,</u> <u>Cutter</u>, 544 U.S. at 725.

Disputes of material facts preclude the parties' motions for summary judgment about whether the VDOC's kosher for Passover foods during Passover or kosher foods served on Common Fare comport with Plaintiff's purported sincerely-held religious dietary beliefs. Defendants explain that these foods are intended to be kosher and generally acceptable to Jewish inmates, whereas Plaintiff asserts that the foods are not kosher or are kosher but made un-kosher by the time the foods are served. Plaintiff avers that he had personally informed Clarke, Robinson, Gilmore, Hicks, and Gourdine about the VDOC's alleged failure to provide kosher and kosher for Passover foods and that each defendant failed to correct the issue. Assuming Plaintiff's allegations as true, it is disputed whether each defendants' failure to correct is merely a negligent or an intentional deprivation of religious exercise.

As for kosher for Passover, it is also disputed whether Plaintiff suffered a substantial burden to his religious exercise. Plaintiff argues how, in principle, it is preferable that the VDOC provide free special food packages to all the Jewish inmates as an entitlement of their faith. Regardless of what was served, Plaintiff was allowed to purchase non-VDOC kosher for Passover foods from the commissary, and nothing in the record indicates Plaintiff was indigent and could not afford those foods for his eight-day holiday. "No substantial burden occurs if the government action merely makes the religious exercise more expensive or difficult or inconvenient[] but does not pressure the adherent to violate [his] religious beliefs or abandon one of the precepts of [his] religion." Rountree v. Clarke, Civil Action No. 7:11cv00572, 2015 U.S. Dist. LEXIS 28511, at *21, 2015 WL 1021286, at *7 (W.D. Va. Mar. 9, 2015) (citing Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007), and Living Water Church of God v. Charter Tp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007)). Notably, however, Plaintiff asserts that he was unable to purchase kosher for Passover foods from the commissary because he was never

8

informed of that option. Thus, these defendants could have imposed a substantial burden if they had hidden that option or made it unavailable. Accordingly, the parties' motions for summary judgment are denied. See Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (finding summary judgment not proper when resolution of qualified immunity question and claim itself both depend upon determining what happened).

B.      Fourteenth Amendment

For the final claim, Plaintiff generally asserts that Defendants discriminated against him for being Jewish. Plaintiff alleges that Warden Allen prevented his receipt of a Jewish calendar[8] and Assistant Warden Bowles, Unit Manager Long, and Captain Ward failed to ensure a safe, secure, and healing environment by ignoring other inmates' anti-Semitism. Plaintiff also generally alleges that Clarke, Robinson, Gilmore, Hicks, and Gourdine discriminated against him because they did not correct his complaints about foods served on Common Fare and during Passover.

The Equal Protection Clause of the Fourteenth Amendment requires that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, [a] plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison, 239 F.3d at 653-54. "Once this showing is made, a court proceeds to determine whether the disparity

---

[8] Plaintiff argues for the first time in his motion for summary judgment that the withholding of the Jewish calendar constituted a "substantial burden" to his religious exercise. First, Plaintiff did not make this claim in the amended complaint; he mentioned the calendar specifically only as one example in his equal protection claim. Plaintiff cannot amend his amended complaint via a motion for summary judgment or response thereto. See, e.g., Cloaninger, 555 F.3d at 336. Second, Plaintiff is a lawyer whose amended complaint is not liberally construed. Third, even if it was liberally construed, Plaintiff offers nothing but his own conclusory assertion of "substantial burden" to assert the withholding of a calendar violated the Free Exercise Clause, and such a conclusory assertion is insufficient to state a claim. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

in treatment can be justified under the requisite level of scrutiny." Id. Reasonableness is the proper level of scrutiny for claims related to incarceration. Id. at 655; see, e.g., Turner, 482 U.S. at 89-92.

1. Assistant Warden Bowles and Unit Manager Long

Plaintiff alleges Bowles and Long "discriminated . . . and exhibited blatant anti-Semitism" for allowing Plaintiff to be removed from the CWCC Veterans' pod. For several weeks, a fellow inmate in that pod had called Plaintiff derogatory names for being Jewish. Three weeks after Plaintiff reported the inmate's harassment, Long accused Plaintiff of harassing the inmate. Two days after the meeting, Plaintiff was ejected from the Veterans' pod while the harassing inmate was allowed to stay. Bowles later told Plaintiff he was moved due to a pending investigation and that Long "had to address your behavior and language several times."

A jury could find that Bowles and Long kicked Plaintiff out of the Veterans' pod because he was Jewish while allowing the instigating, non-Jewish inmate to stay. Defendants have not addressed whether this alleged disparity in treatment can be justified as reasonable given the circumstances or history of conduct in the Veterans' pod. Alternatively, a jury could find it was reasonable to remove Plaintiff from the Veterans' pod based on his purported behavioral issues or pending investigation. Accordingly, the parties' motions for summary judgment are denied for this claim.

2. Captain Ward

Plaintiff alleges that defendant Ward exhibited "complete indifference" toward Plaintiff's complaint about an inmate who said, "Fuck the Jews," in the dining hall during Passover. Plaintiff complained to a sergeant in the dining hall, alleging it was defamation, and was dissatisfied with the sergeant's response. Plaintiff faults Ward for not taking "disciplinary or

other action to this blatant display of anti-Semitism, thereby contributing to an unsafe, unwelcome, and hostile environment for Jews in the facility."

Ward is entitled to qualified immunity and summary judgment. No clearly established law authorizes the claim that a supervisory correctional officer is liable for damages for a disparaging comment from one inmate to another and addressed by a subordinate correctional officer. Even if a state official had spoken the disparaging words, the law does not support an § 1983 claim. See, e.g., Moody v. Grove, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."). Accordingly, Defendants' motion for summary judgment is granted in part and Plaintiff's motions for summary judgment are denied as to this claim.

3.  HCC Warden Allen

Plaintiff alleges that Allen's refusal to allow Plaintiff to possess a Jewish calendar at HCC on August 18, 2015, constitutes unlawful discrimination. On the day it arrived, staff incorrectly told Plaintiff he could not have the calendar because "[c]alendars are not allowed per policy." However, policy allowed Plaintiff to possess one calendar no larger than 8 ½" by 11". Plaintiff objected, and mailroom staff told Plaintiff a new rationale: it was too big for measuring 16" by 11".

Plaintiff explained to Allen that the calendar helped him practice his faith. Allen affirmed his staff's decision, noting, "The investigation reveals calendars are to be 8 ½ [inches

by] 11 [inches]. The calendar that arrived in the mail for you was 11 [inches by] 16 [inches]. Therefore, it is unauthorized mail and you will not be allowed to have it in your possession." Once Plaintiff left Allen's custody at HCC, he received the Jewish calendar at CWCC without issue. Plaintiff provided the court a photocopy of the calendar from a different year, and it appears to measure approximately 8" by 11" when closed.

A jury could find that Allen treated the Jewish calendar differently by applying the size restriction to it open versus closed like other calendars or materials.[9] Furthermore, Allen has not addressed whether this alleged disparity in treatment can be justified as reasonable. Nonetheless, a jury could find that, inter alia, Allen negligently investigated the grievance or sought to insulate his staff's erroneous initial decision without regard to Plaintiff's religion. See, e.g., Morrison, 239 F.3d at 654 (noting a successful claim must establish that unequal treatment was the result of intentional or purposeful discrimination). Accordingly, neither Plaintiff nor Allen is entitled to summary judgment for this claim.

4. Clarke, Robinson, Gilmore, Hicks, and Gourdine

Other than generally invoking the term discrimination and alleging he did not get the foods he wanted, Plaintiff fails to describe how Clarke, Robinson, Gilmore, Hicks, and Gourdine treated him differently than a similarly situated inmate. Indeed, he alleges the opposite – these defendants did not treat him differently and did not give him food not available to other inmates. Because Plaintiff fails to demonstrate that he has been treated differently from others with whom

---

[9] Defendants have not clarified whether the maximum measurements are when a calendar is open or closed, but a review of other size limits supports an inference that the measurements are for closed items. For example, an address book is limited to 5" by 8". If this dimension was for an open address book, the overall dimension would be either 2.5" by 8" or 5" by 16". It seems more likely that the 5" by 8" limit is for a closed address book.

he is similarly situated, Clarke, Robinson, Gilmore, Hicks, and Gourdine are entitled to qualified immunity and summary judgment for the equal protection claims.

## V.

Plaintiff alleges in his motion for contempt that some defendants and VDOC staff failed to comply with my Order granting in part his motion for a preliminary injunction. Defendants dispute Plaintiff's assertions. The motion for contempt and all other motions are referred to United States Magistrate Judge Joel C. Hoppe pursuant to 28 U.S.C. § 636(b)(1). He is designated to conduct hearings, including evidentiary hearings, as he finds necessary, and he shall file his proposed findings and recommendations when required by § 636(b)(1)(B).

## VI.

For the foregoing reasons, I grant in part and deny in part Defendants' motion for summary judgment and deny Plaintiff's motions for summary judgment. Plaintiff's RLUIPA claims and request for declaratory and injunctive relief are dismissed as moot. Plaintiff's claims under the Free Exercise Clause remain pending against Clarke, Robinson, Gilmore, Hicks, and Gourdine, and his claims under the Equal Protection Clause remain pending against Bowles, Long, and Allen. All motions, including Plaintiff's motion for contempt, are referred to United States Magistrate Judge Joel C. Hoppe.

**ENTER**: This 18th day of September, 2018.

Senior United States District Judge