CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 2 6 2019

JULIA C. DUDLEY, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DAN HAENDEL,** **Plaintiff,** | ) | **Civil Action No. 7:17-cv-00135** |
| **v.** | ) | **MEMORANDUM OPINION** |
| **HAROLD W. CLARK, et al.,** **Defendants.** | ) | **By: Hon. Jackson L. Kiser** **Senior United States District Judge** |

---

Dan Haendel, a former Virginia inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 et seq, against defendants associated with the Virginia Department of Corrections ("VDOC"), Haynesville Correctional Center ("HCC"), and Coffeewood Correctional Center ("CWCC").[1] Currently pending is a Motion for Civil Contempt of Court Order ("Motion") filed by Plaintiff against Defendant Gilmore. [ECF No. 45.] The Motion had been referred to a United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (the "R&R") [ECF No. 78], and Plaintiff timely filed his objections [ECF No. 79]. For the reasons that follow, I will reject Plaintiff's objections and adopt the R&R in its entirety.

[1] At the time Plaintiff filed his complaint, he was an attorney of the District of Columbia Bar. See In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites); Williams v. Long, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating). He has since been disbarred. In re Dan Haendel, No. 18-BG-522 (D.C. Ct. App. Jan. 3, 2019). However, I decline to extend the liberal construction standard to a disbarred attorney. See Haines v. Kerner, 404 U.S. 519, 521 (1972) (observing that a court should hold pro se complaints to "less stringent standards than formal pleadings drafted by lawyers"); McNamara v. Brauchler, 570 F. App'x 741, 743 n.2 (10th Cir. 2014) (declining to liberally construe a pro se complaint by a disbarred attorney); Rubin v. Jenkusky, 601 F. App'x 606, 610 n.4 (10th Cir. 2015) (same).

## I. Background

In 2017, Plaintiff was a prisoner in the custody of the VDOC at Coffeewood. Plaintiff was transferred to Coffeewood in September 2015 so that Plaintiff could participate in VDOC's Common Fare Diet ("Common Fare"). Common Fare is a food service program developed the VDOC to meet the dietary needs of inmates that have food-related religious requirements that cannot be accommodated by foods on other VDOC menus. Plaintiff filed a complaint in this court alleging that certain prison officials violated his rights under § 1983 and RLUIPA by failing to provide him with a kosher diet under Common Fare consistent with his religious beliefs and by otherwise discriminating against him on the basis of those beliefs.

In February 2018, Plaintiff filed a "Motion for Immediate Injunctive Relief" seeking an order requiring the VDOC and Coffeewood to provide (1) "certified Kosher for Passover meals during Passover 2018 beginning March 30, 2018," and (2) "certified daily Kosher meals[,] which Common Fare fails to do. . . ." (Pl.'s Mot. for Inj. Relief 1 [ECF No. 34].) In an order entered on March 29, 2018 (the "Injunction Order"), I took under advisement Plaintiff's request for certified daily Kosher meals and granted, in part, Plaintiff's request for Kosher for Passover meals, providing the following directive:

> [T]he Warden of Coffeewood shall allow Plaintiff to receive the donated Kosher for Passover meals already obtained and delivered for Plaintiff before the start of the VDOC's 2018 Passover program; Plaintiff must still comply with third party purchase requirement and other aspects of the VDOC's 2018 Passover program; and any Kosher for Passover meal to be delivered to Plaintiff as a result of this Order is still subject to Coffeewood's usual screening or security procedures to ensure and maintain institutional security.

(Order on Mot. for Inj. Relief 5 [ECF No. 42].)

On April 12, 2018, Plaintiff filed the present Motion requesting that I "cite Warden Ivan Gilmore . . . for civil contempt for flagrant violations of the [Injunction Order]." (Pl.'s Mot. for Civil Contempt 1 [ECF No. 45] ("Pl.'s Mot.").) In his Motion, Plaintiff alleged that Gilmore, along with other representatives of the VDOC, violated the Injunction Order by, inter alia, arbitrarily denying Plaintiff certain donated Kosher for Passover items shipped to Coffeewood by a third party. Opposing the Motion, Defendants asserted that the Coffeewood staff took great care to ensure compliance with the Injunction Order and that "Plaintiff's allegations are either factually inaccurate or utterly fabricated." (Defs.' Opp'n Br. 2 [ECF No. 47].)

In the R&R, the magistrate judge recommended denying Plaintiff's motion.

## II. Standards of Review

### A. R&R

In a report pursuant to 28 U.S.C. § 636(b), the magistrate judge makes only recommendations to the court. The recommendations have no presumptive weight, and responsibility for making a final determination remains with the court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo review of those portions of the report to which specific objection is made, and may "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1). In the absence of specific objections to the report, the court is not required to give any explanation for adopting the recommendation. Camby v. Davis, 718 F.2d 198, 199-200 (4th Cir. 1983). Objections that only repeat arguments raised before a magistrate judge are considered general objections to the entirety of the report and recommendation, which has the same effect as a failure to object. Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008).

### B. Motion for Civil Contempt

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966). Contempt is a "drastic remedy" for which the movant carries the "heavy burden" to establish. Morgan v. Barry, 596 F. Supp. 897, 898 (D.D.C. 1984). The Fourth Circuit has held that to establish civil contempt, the movant must prove each of the four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor has actual or constructive knowledge; (2) the decree was in the movant's favor; (3) the alleged contemnor by its conduct violated the terms of the decree and had knowledge (at least constructive) of such violation; and (4) the movant suffered harm as a result.

Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship, 608 F. App'x 130, 131 (4th Cir. 2015) (citing JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc., 359 F.3d 699, 705 (4th Cir. 2005)). "Willfulness is not an element of civil contempt." Id. (citing United States v. Westbrooks, 780 F.3d 593, 596-97 n.3 (4th Cir. 2015)). In the R&R, the magistrate judge correctly identified the third element of civil contempt, that the contemnor violated the terms of the decree by its conduct and had knowledge, as the primary issue.

## III. Analysis

After review of Plaintiff's objections, I conclude they either repeat arguments previously raised to the magistrate judge or are irrelevant. Nevertheless, I will discuss each objection in turn.

Plaintiff's following objections are irrelevant to his Motion: requests for testimony from Chaplain Burke and Unit Manager Hillian (Pl.'s Objs. 1-2); requests for all receipt logs of donated Kosher for Passover packages for Passover 2018 (id. at 2); Judge Elizabeth Dillon's determination

in a separate case that the Common Fare is not kosher (id. at ¶ 1); the magistrate judge mislabeled the sender of the damaged food box (id. at ¶ 2); a request for phone logs to determine whether Gilmore called Morris on March 30 or April 2, 2018 (id. at ¶¶ 3, 6); Gilmore spoke derogatorily about the Injunction Order (id. at ¶ 4); and a meandering, colorful, and irrelevant paragraph about the nature of juice in prisons (id. at ¶ 9).

Meanwhile, Plaintiff previously raised the rest of his objections to the magistrate judge. In Plaintiff's first "claim," he reasserts both a general disbelief in Defendants' credibility and the argument that the magistrate judge should not have accepted Defendants' justifications for the unusual number of officials involved in the search of his Kosher for Passover shipments. (Id. at 1, ¶¶ 2, 3, 4, 5, 6, 8, 10, 12.) The R&R directly addressed these issues. (See R&R at 13 n.3 (Gilmore's alleged derogatory statements about the Injunction Order were "troubling if true" but did "not violate the Injunction Order because nothing in that Order control[led] what Gilmore" could or could not say); id. at 15-18 (The magistrate judge acknowledged "that the screening process for at least some of Plaintiff's shipments was atypical," but ruled that "the fact that the screening process was unusual does not also show that it was aimed at harassing or retaliating against Plaintiff, or that it violated any specific command in Judge Kiser's Injunction Order. Instead, it appears that correctional officials were simply doing their best to comply with the Order under an unusual set of circumstances."); id. at 13 (holding that "[e]ach of the correctional officers who testified at the evidentiary hearing was unequivocal in his position that items not issued to Plaintiff were considered contraband because of health and safety concerns"); id. at 14 ("Gilmore and the other VDOC officials who testified were uniform and clear" regarding fruit juice as contraband); id. at 14 n.4 (Plaintiff's assertion that Defendants were responsible for damaging his

package, rather that USPS, was "at best speculative" and was "not sufficient to persuade the Court."); id. at 15 (Haendel's proffered testimony was "hardly the type of clear and convincing evidence necessary to establish that VDOC officials intentionally failed to follow 'Coffeewood's usual procedures' in removing the fruit juice from Haendel's personal possession") (citation removed).)

Second, Plaintiff argues that the magistrate judge incorrectly determined that Coffeewood's previous allowance of juice and other foods that were confiscated in Passover 2018 constituted "mistakes," and that the VDOC's "unwritten" policy of confiscating fruit juice demonstrates that they violated the Injunction Order. (Pl.'s Objs. at 1, ¶¶ 3, 7, 9, 11, 12.) The magistrate judge ruled on these issues, as well. (See R&R at 15 ("Rather than showing a rule prohibiting prisoner's private possession of fruit juice did not exist, [Plaintiff's witness's testimony] taken with the other credible evidence presented demonstrates that at times the rule was mistakenly not enforced."); id. at 17 ("Butler acknowledged that he had mistakenly given the containers of juice to Plaintiff . . . when Haendel argued that . . . he should receive the containers of juice from the second package."); id. at 15 n.5 ("[E]ven if the prohibition on juices w[as] an informal or unwritten rule, the Injunction Order did not limit the Warden of Coffeewood to the enforcement of [only] written rules, but noted that any items delivered to Haendel were still subject to all 'usual screening or security procedures.'") (citing Order on Mot. for Inj. Relief 5, ¶ 1); id. at 14 ("Hibbs, Gourdine, Butler, and Gilmore each testified that Coffeewood prohibits inmates from having fruit juice in their personal possessions. Butler noted that the basis for this policy is that fruit juice can be used to create alcohol. Plaintiff attempted to undermine this testimony by arguing that there is no written rule prohibiting possession of juice. . . . Gilmore and the other VDOC

officials who testified were uniform and clear in their understanding that fruit juice is considered contraband once it leaves the dining hall."); see also Pl.'s Objs. at ¶ 9 (Plaintiff acknowledging juice outside the dining hall as contraband: "VDOC knows only too well that this juice is smuggled out of the dining room to be made into wine. The kitchen and the dining hall are great practice areas for inmates who want to hone their stealing skills.").)

Plaintiff's objections merely repeat arguments raised before the magistrate judge and are thus considered general objections to the entirety of the report and recommendation, which has the same effect as a failure to object. Veney, 539 F. Supp. 2d at 845. Therefore, I conclude that neither Plaintiff nor Defendants object to the corresponding portions of the R&R. Having reviewed the relevant portions of the R&R, I find that they are thorough, well-reasoned, and contain no clear error.

**IV.**

Accordingly, I will overrule Plaintiff's objections and adopt the R&R in its entirety. I will deny in Plaintiff's Motion for Civil Contempt of Court Order. [ECF No. 45.]

The Clerk is directed to send a copy of this memorandum opinion and accompanying order to the parties.

**ENTERED** this 20th day of March, 2019.

Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE