IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| DAN HAENDEL, ) | | |
|     Plaintiff, ) | Civil Action No. 7:17-cv-00135 | |
| ) | | |
| v. ) | MEMORANDUM OPINION & ORDER | |
| ) | | |
| HAROLD W. CLARK, et al., ) | By:   Joel C. Hoppe | |
|     Defendants. ) | United States Magistrate Judge | |

Plaintiff Dan Haendel, a former Virginia inmate appearing pro se, filed this action under 42 U.S.C. § 1983, naming several officials at the Virginia Department of Corrections ("VDOC"), Haynesville Correctional Center, and Coffeewood Correctional Center as Defendants. Haendel alleges that the Defendants unlawfully failed to accommodate his religious practices and discriminated against him, in violation of the First and Fourteenth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). This case is scheduled for a bench trial beginning on January 21, 2021.

I. Background

In a Memorandum Opinion and accompanying Order issued September 18, 2018, ECF Nos. 56, 57, the Honorable Jackson L. Kiser granted in part and denied in part the parties' cross motions for summary judgment, ECF Nos. 29, 55. Judge Kiser dismissed Haendel's RLUIPA claims. Mem. Op. 13 (Sept. 18, 2018), ECF No. 56. He found that genuine disputes of material fact precluded summary judgment as to Haendel's claims against Defendants Clark, Robinson, Gilmore, Hicks, and Gourdine under the Free Exercise Clause, *id.* at 8–9, and his claims against Defendants Bowles, Long, and Allen under the Equal Protection Clause, *id.* at 10, 12.

On June 15, 2020, Haendel again moved for summary judgment. Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 118. His motion relies on "the record in this cause of action, including

the amended complaint"; his prior motion for summary judgment; and "documents already submitted" in this action. *Id.* at 1. He offered no additional evidence beyond that submitted for his previous motion for summary judgment. Haendel seeks summary judgment on three claims: (1) the Common Fare diet offered by the VDOC is not kosher and, thus, fails to provide a diet that comports with his religious beliefs, in violation of the Free Exercise Clause; (2) he was denied access to a Jewish calendar in 2015 at Haynesville Correctional Center, in violation of the Equal Protection Clause; and (3) he was removed from the Veteran's Dorm at Coffeewood Correctional Center because of his religious beliefs, in violation of the Equal Protection Clause.[1] *Id.* at 2–3.

## II. Standard of Review

Haendel styles his filing as a motion for summary judgment. A motion for summary judgment allows a court to resolve a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asserting or contesting a fact must support its assertion by citing materials in the record. Fed. R. Civ. P. 56(c)(1). Because the same facts have already been presented to the Court on Haendel's prior motion for summary judgment, which Judge Kiser denied, Haendel's current motion has many of the hallmarks of a motion to reconsider.

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment" or final order under Rule 60(b) of the Federal Rules of Civil Procedure, *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003), because interlocutory orders "may be revised at any time before the entry of

---

[1] Haendel did not renew his request for summary judgment on his claim that he was denied "kosher for Passover" food. *See* Mem. Op. 8–9 , ECF No. 56.

2

a judgment adjudicating all the claims and all the parties' rights and liabilities," Fed. R. Civ. P. 54(b). *See Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1469–70, 1472–74 (4th Cir. 1991). Rule 54(b) gives a district court "flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (emphasis omitted). But the court's discretion "is not limitless," *id.*, and "[s]uch motions . . . should be granted sparingly," *Wootten v. Commonwealth of Va.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (quotation marks omitted). Relief under Rule 54(b) may be appropriate where the moving party shows that the Court "patently misunderstood a party" in reaching its decision, *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983), there has been "a controlling or significant change in the law or facts" since the Court issued its order, *id.*,, or "the prior decision was clearly erroneous and would work manifest injustice" if allowed to stand, *Am. Canoe Ass'n*, 326 F.3d at 515 (quotation marks omitted). *See Wootten*, 168 F. Supp. 3d at 893 (citing the same factors). "[R]econsideration is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant." *Id.* Under either Rule 54(b) or Rule 56(a), Haendel's motion must be denied because genuine disputes in material facts that are present in the record persist.

### III. Discussion

A. *First Amendment Claims*

Haendel argues that the Honorable Elizabeth K. Dillon's opinion in *Estes v. Clarke*, No. 7:15cv00155, 2018 WL 2709327 (W.D. Va. June 5, 2018), establishes that Defendants' actions in denying him a kosher diet under Common Fare violated his Free Exercise rights. Pl.'s Mot. 6–

7. In *Estes*, the prisoner claimed that the VDOC's Common Fare program substantially burdened his religious belief that he must eat a kosher diet. 2018 WL 2709327, at *5–7. Evaluating this claim under RLUIPA, Judge Dillon determined that the VDOC defendants had not shown that Common Fare was the least restrictive means to further their compelling interests in cost containment or administrative concerns because alternatives to the program existed, such as rabbinical supervision of Common Fare or prepacked certified-kosher meals. *Id.* at *6–7. Haendel's claim proceeds under a less stringent standard, however.

"The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices," including correctional policies intended to limit incarcerated persons' religious beliefs. *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014). "However, a neutral and generally applicable policy that substantially burdens an inmate's sincere religious exercise is constitutional if it is 'reasonably adapted to achieving a legitimate penological' interest." *Snodgrass v. Robinson*, No. 7:14cv269, 2015 WL 4743986, at *12 (W.D. Va. Aug. 10, 2015) (quoting *Wall*, 741 F.3d at 499). In other words, the Free Exercise Clause allows prison officials to restrict inmates' "religious practices subject to a 'reasonableness' test that accords substantial deference to the professional judgment of correctional officers." *Wall*, 741 F.3d at 499 (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The reasonableness of a prison's policy is assessed under the four factors outlined in *Turner v. Safley*, 482 U.S. 78 (1987):

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the

>allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is instead an exaggerated response to prison concerns."

*Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006) (brackets omitted) (quoting *Turner*, 482 U.S. at 89–92). The prisoner carries the burden of proof under *Turner* to disprove the validity of the prison regulation at issue. *Overton*, 539 U.S. at 132. Thus, unlike RLUIPA, the Federal Constitution requires the VDOC to fashion policies that are only reasonably related to a legitimate penological interest—it does not require that the VDOC "should use less restrictive means to achieve its desired goals" whenever practicable. *Hines v. S.C. Dep't of Corrs.*, 148 F.3d 353, 358 (4th Cir. 1998); *see Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) (quoting *Lovelace*, 472 F.3d at 186) ("RLUIPA provides more stringent protection of prisoners' free exercise rights than does the First Amendment, applying 'strict scrutiny instead of reasonableness.'")

Although some elements of Haendel's claim appear undisputed, I do not find any reason to depart from Judge Kiser's determination that even assuming the truth of Haendel's assertion that Common Fare is not kosher and that he told the Defendants of this shortcoming, "it is disputed whether each defendant['s] failure to correct is merely a negligent or an intentional deprivation of religious exercise." Mem. Op. 8, ECF No. 56. That disputed fact precludes summary judgment.

B.   *Equal Protection Claims*

Haendel also claims that the Defendants discriminated against him for being Jewish. He asserts that he was removed from the Veteran's Dorm, but another non-Jewish inmate, who made derogatory statements about Haendel's Jewish faith, was not. Pl.'s Mot. 4–5. He also asserts that he was denied a Jewish calendar on the purported ground that it exceeded the size limit under

5

VDOC policy. *Id.* at 5–6. Judge Kiser construed these claims under the Equal Protection Clause of the Fourteenth Amendment. *See* Mem. Op. 9–10, ECF No. 56.

The Equal Protection Clause provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If this showing is made, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* Because the court is not "equipped to deal with the increasingly urgent problems of prison administration and reform," *id.* (quoting *Turner*, 482 U.S. at 84), and the court's "review of prison policies and actions is tempered by the recognition that 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights,'" *id.* (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987)), a reasonableness standard is used in the context of prisons to evaluate equal protection claims, *see id* at 655. Therefore, the focus is whether the policy is reasonably related to "legitimate penological interests" and whether the response is exaggerated when compared to the particular concern. *See id.* (quoting *Turner*, 482 U.S. at 89). "This lesser standard of scrutiny . . . ensure[s] that prison administrators and not courts make difficult decisions concerning institutional operations." *Id.*

As to the Veteran's Dorm claim, Judge Kiser found that disputed facts existed about the impact of Haendel's and the non-Jewish prisoner's behavior on the decision to remove Haendel and allow the other prisoner to remain. Mem. Op. 10, ECF No. 56. As to the Jewish calendar, Judge Kiser determined that disputed facts existed as to whether Defendant Allen may have

treated the calendar differently than non-religious material by measuring it open instead of closed and as to whether his assessment of the calendar's size may have been negligent, rather than intentional. *Id.* at 12. Nothing in the materials submitted to the Court shows that Judge Kiser's determinations are incorrect. Indeed, I agree that the reasons he cited show that disputes in material facts exist as to each of these Equal Protection claims. Accordingly, summary judgment is not warranted.

## IV. Conclusion

For the foregoing reasons, Haendel's motion for summary judgment, ECF No. 118, is hereby DENIED.

The Clerk shall send a copy of this Memorandum Opinion and Order to the parties.

ENTER: December 7, 2020

Joel C. Hoppe
U.S. Magistrate Judge

7